IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| JANE DOE,<br><br>            Plaintiff,<br>v.<br><br>INFLECTION RISK SOLUTIONS, LLC,<br><br>            Defendant. | Case No.: 2:25-cv-00069<br><br>**COMPLAINT AND<br>JURY TRIAL DEMANDED** |

## COMPLAINT

Jane Doe ("Plaintiff" or "Ms. Doe") by and through her counsel brings the following Complaint against Inflection Risk Solutions, LLC, ("Defendant" or "Inflection") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report, referred to by Defendant as a Consumer Safety Report ("consumer report'), that Defendant published to Airbnb, which included two felony convictions that were expunged.

## INTRODUCTION

1.     This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.     Defendant is a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also

known as tenant screening reports, generated from its database and furnishes these consumer reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendant assembled and sold a consumer report about Plaintiff to third party Airbnb.

4. That consumer report was specific to the tenant screening industry.

5. Within that consumer report, Defendant published inaccurate information about Plaintiff to Airbnb, which ultimately biased Airbnb against Plaintiff.

6. Specifically, Defendant published to Airbnb two criminal records that were *expunged*.

7. Plaintiff's reservation on the Airbnb platform was unceremoniously denied, and Plaintiff's account was suspended from the Airbnb platform, after receiving the consumer report from Defendant wherein Defendant published inaccurate information about Plaintiff.

8. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Wayne County, Michigan regarding the subject criminal records prior to publishing the information to Airbnb.

9. Had Defendant performed even a cursory review of the public court records, it would have discovered that the records had been expunged more than two years before the consumer report had been prepared and sold to Airbnb.

10. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's consumer report being grossly inaccurate.

11. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

12. Defendant's inaccurate consumer report cost Plaintiff the ability to rent properties through the Airbnb platform which she needed for traveling through different cities for her daughter's barrel racing competition. Defendant's inaccurate consumer report harmed Plaintiff, causing her physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of failing to provide adequate accommodation for her family, and specifically for her daughter.

13. Defendant's inaccurate consumer report jeopardized Plaintiff's and that of her family's trip. Plaintiff was planning to travel through various cities across the country with her family for her daughter's barrel racing competition. Plaintiff's

family relies on her daughter's barrel racing competitions as their primary source of income.

14. Plaintiff felt utterly helpless and distraught to learn that Defendant reported the criminal records despite the fact such records were expunged. Not only that, but of course the related fallout with Airbnb wherein Airbnb denied Plaintiff's reservation and removed her account made Plaintiff felt that she was inadequate to provide for her family.

15. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

16. Jane Doe ("Plaintiff" or "Ms. Doe") is a natural person residing in Fort Myers, Florida, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17. Defendant Inflection Risk Solutions, LLC ("Defendant" or "Inflection") is a Nevada corporation doing business throughout the United States, including in the State of Florida and in this District, and has a principal place of business located at 1 Montgomery Street, Suite 2400, San Francisco, California 94104. Inflection can be served at its registered agent for service C T Corporation System located at 330 N Brand Blvd, Glendale, CA 91203.

18. Among other things, Defendant sells consumer reports, often called tenant screening reports, property management companies, short-term housing rental platforms like Airbnb, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

19. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

22. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates consumer reports like the one Defendant prepared in Plaintiff's name. The FCRA provides a number of protections for housing applicants who are the subject of consumer reports for the purpose of securing housing and credit.

23. In the parlance of the FCRA, tenant screening reports, referred to by Defendant as a consumer safety reports, are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

24. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

25. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

26. Defendant disregarded its duties under the FCRA with respect to Plaintiff's consumer report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

27. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

28. Consumer Reports in the tenant screening industry are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating these consumer reports.

29. Consumer Reporting Agencies, like Defendant, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

30. In fact, Defendant processes in excess of one million background checks per month and returns results in less than point three (.3) seconds, on average.

31. Given that Defendant is in the business of selling consumer reports, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

32. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

33. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

34. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

35. An appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting an expunged record and thereby defeating the very purpose of expungement.

36. As a provider of consumer reports, Defendant should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS
### Plaintiff Applies for Short-Term Housing with Airbnb

37. Plaintiff resides in Fort Myers, Florida, with her husband and three children.

38. Plaintiff's daughter is actively engaged in barrel racing competition, which Plaintiff's family use to earn an income. Plaintiff was looking to looking for properties that would accommodate her family of five while they travel across the country for her daughter's barrel racing competitions.

39. On or around December 23, 2024, Plaintiff attempted to book accommodations for her family's travels through the Airbnb platform.

40. In order to be able to book a rental property via the Airbnb Platform, Plaintiff was required to authorize a background check. Plaintiff authorized the required background check as there was nothing on her record of concern.

41. Moreover, Plaintiff and her family looked forward to the additional space, comfort, and amenities of the properties listed on the Airbnb platform.

### Defendant Published an Inaccurate Consumer Report to Airbnb

42. Airbnb contracts with Defendant to issue consumer reports on prospective tenants to determine whether the prospective tenant is eligible to rent a property listed on the Airbnb platform.

43. On or about December 23, 2024, Airbnb ordered a consumer report on Plaintiff from Defendant.

44. On or about December 23, 2024, Defendant sold a consumer report about Plaintiff to Airbnb, wherein Defendant published information including Plaintiff's expunged criminal history.

45. The consumer report, also known as a tenant screening report in this context, and identified as a Consumer Safety Report by Defendant, is a consumer report regulated by the FCRA.

46. Within that consumer report, Defendant published improper and inaccurate information about Plaintiff. Specifically, within its consumer report about Plaintiff, Defendant published the pertinent details of criminal records that were *expunged*. Thereby, defeating the entire purpose in seeking and securing an expungement order in the first place.

47. Defendant's reporting of the criminal records, despite an expungement order, was not only inaccurate reporting but reckless.

48. Plaintiff dutifully and sensibly sought an expungement order of the subject criminal records. Stated otherwise, these criminal records *should not have been reported* by Defendant.

49. A cursory review of the widely available public court records confirms that Plaintiff successfully completed the requirements necessary to have the record discharged and expunged.

50. Plaintiff successfully secured a Court Order from Wayne County Circuit Court, rendering Plaintiff's discharge and expungement granted.

51. The sole reason Defendant inaccurately reported the expunged criminal records was due to Defendant's failure to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to a third-party in response to Plaintiff's attempt to book short-term housing reservations on the Airbnb Platform. Had Defendant followed reasonable procedures, it would have discovered that the criminal records had been expunged and that it should not have reported the same.

52. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

### Airbnb Denies Plaintiff's Short-Term Housing Application

53. On or about December 23, 2024, Plaintiff received an email stating that Airbnb removed Plaintiff's account from the Airbnb platform effectively canceling her reservation.

54. Specifically, Airbnb stated that Plaintiff's account was removed because Defendant reported a record matching Plaintiff's information.

55. In fact, Airbnb removed Plaintiff's Airbnb account merely several hours after Plaintiff reserved the short-term housing on the Airbnb platform.

56. Within those few hours, Defendant received Airbnb's request for a consumer report about Plaintiff, prepared and published that report to Airbnb and in reliance on the same, Airbnb removed Plaintiff from the Airbnb platform.

57. In all likelihood, and upon information and belief, it took Defendant less than point three seconds (.3) to return results about Plaintiff to Airbnb.

58. Shortly thereafter, Plaintiff obtained a copy of the consumer report and was shocked and humiliated upon reviewing the previously expunged criminal records contained within the consumer report.

59. Defendant reported the subject criminal records despite the fact that Plaintiff had completed all necessary requirements and secured a Court Order to ensure the record had been expunged ("Expungement Order").

60. Upon information and belief, subsequent to the expungement, a cursory review of Wayne County Circuit Court public records would clearly have reflected that the subject criminal records were no longer a part of the public record due to the expungement.

61. Thus, Defendant's reporting of the expunged records after the date of the Expungement Order was patently inaccurate and evidence of Defendant's failure to meet its obligations pursuant to section 15 U.S.C. Section 1681e(b).

62. Upon information and belief, Defendant's inaccurate reporting of Plaintiff's criminal records caused Airbnb to remove Plaintiff's account.

63. Plaintiff immediately appealed the decision to remove her account with Airbnb. Plaintiff informed Airbnb that the reported criminal records were expunged and never should have been reported in the first place.

64. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting. She even went so far as checking the public record to ensure that she wasn't mistaken that the expungement order was effective. Plaintiff was very concerned about the impact to the trip her family was intending to embark on, but beyond that, she was also gravely concerned about the impact of the same on her future and career.

65. The public court record information was widely available to Defendant prior to publishing Plaintiff's consumer report to Airbnb, but Defendant failed to perform even a cursory review of such information.

66. Defendant's false report cost Plaintiff housing opportunities that met her and her family's needs, including those attendant to size and affordability.

67. Due to Defendant's unreasonable procedures and despite Plaintiff's continued efforts to have his Airbnb reservation reinstated, or at minimum, her privileges to use the Airbnb platform, Plaintiff was forced to seek other, more

expensive, accommodations for her family trip, including renting RV trailers and booking double hotel rooms.

68. Specifically, Plaintiff had previously rented Airbnb properties for her family's travels in connection with her daughter's competitions anywhere around $1,200 for a 3-5 day stay. However, the RV Plaintiff rented was $1,200 for 2 days and only held 2-3 people. Also, the extra hotel rooms Plaintiff had to book cost an extra $600-$1000 a stay. As of the date hereof, Plaintiff is still unable to use the Airbnb platform.

69. Furthermore, Plaintiff and her family were not able to attend two of her daughter's barrel race competitions, which resulted in lost income. In addition, because Plaintiff was not able to bring her daughter to the barrel racing competitions, Plaintiff's daughter missed out on an opportunity to make Nationals, which could come with more publicity and other economic opportunities.

70. Moreover, Plaintiff's daughter is trying to set the standard for other people of color to join barrel racing. Plaintiff's daughter was very upset that she missed out on her opportunity to showcase her skills at Nationals, which devastated Plaintiff.

71. But for Defendant's inaccurate consumer report, Plaintiff's housing reservations would have been approved, and Plaintiff would have been spared the

humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's publication of inaccurate information to Airbnb.

72. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

73. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; lost wages; incurred additional fees to make new travel arrangements; loss of opportunity for future bookings on the Airbnb platform; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

74. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

75. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

76. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

77. At all times pertinent hereto, the above-mentioned Consumer Safety Report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

78. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

79. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of wages and economic opportunities; incurred additional fees to make new travel arrangements; loss of opportunity for future bookings on the Airbnb platform; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

80. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF
**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

//

Dated: January 27, 2025

                                                               */s/ David Pinkhasov*
David Pinkhasov, FL # 1040933
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: (718) 701-4605
F: (718) 715-1750
E: dpinkhasov@consumerattorneys.com

*Attorney for Plaintiff,*
*Jane Doe*